UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEANIE HORTON,

    Plaintiff,

v.                                          CASE NO. 3:19-CV-418-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an appeal of the administrative denial of social security income benefits (SSI), disability insurance benefits (DIB), and period of disability benefits.[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the administrative law judge (ALJ) erred in evaluating the opinions of Dr. Pennington, her treating physician, and Dr. Lucas, a consultative psychologist. After considering the parties' memoranda (docs. 21 and 22) and the administrative record, I find the Commissioner's decision is supported by substantial evidence. I affirm.

    *A.*    *Background*

Plaintiff Jeanie Horton, born on November 9, 1968, was 45 years old on her alleged onset date of September 29, 2014. She testified that in September 2014 she experienced severe high blood pressure that despite several hospital stays remained uncontrolled, and that ultimately resulted in a diagnosis of renal disease requiring removal of her right kidney (R. 92). Unfortunately, Plaintiff has renal stenosis in her remaining left kidney, and her blood pressure remains severely high (R. 92). In addition to kidney problems, Plaintiff has a history of mental health problems. Plaintiff testified that as a child she was a victim of sexual violence and physical

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

1

abuse (R. 100). She quit school after becoming pregnant at age 17, and later earned a GED/ high school diploma (R. 915). She married at age nineteen and has four sons. At the administrative hearing, Plaintiff was divorced and living with one of her sons and his fiance´ (R. 163, 221). Her past jobs include substitute teacher, waitress, and telemarketer, and work at a discount auto parts store (R. 194-202).

Following hearings on October 5, 2017, January 31, 2018, and August 14, 2018, the ALJ found that Plaintiff suffers from the severe impairments of obesity; right kidney nephrectomy; hypertension; chronic obstructive pulmonary disease (COPD) secondary to chronic tobacco abuse; anxiety and depression; status-post Achilles tendon repair; status-post right elbow tendonitis repair; and mild coronary artery disease, with mild findings on cardiac catheterization (R. 20). However, the ALJ determined that Plaintiff is not disabled, because she retains the RFC to perform a range of light work as follows:

> … the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional restrictions. The claimant can sit, stand and or walk, for six hours each during an eight-hour workday and she is capable of lifting and carrying up to 20 pounds on an occasional basis and 10 pounds or less on a frequent basis. The claimant can occasionally use her upper and lower extremities for the push/pull operation of arm, hand and foot/pedal controls. The claimant can balance, stoop kneel, crouch, crawl and climb ramps and stairs on an occasional basis, but never climb ropes, ladders or scaffolding. The claimant cannot reach overhead, but can reach in all other directions, finger, feel, and handle on a frequent basis. The claimant has no limitations for seeing, speaking or hearing. The claimant must avoid work at unprotected heights and or work in proximity to concentrated industrial vibrations. The claimant is limited to simple, rote, and repetitive tasks performed in a well-structured work environment where the job duties do not change materially from one day to the next, so that what is done on Monday is done throughout the week. The claimant can tolerate interaction with the general public. The claimant cannot perform work that requires her to meet a strict production goal or quota, such as assembly or pay-by-the-piece type work. The claimant works better with things rather than with people and cannot perform work that requires her work to be measured by performance of anyone else who she works n proximity to, meaning no tandem-type work.

(R. 22). The ALJ concluded that, with this RFC, Plaintiff cannot perform her past work, but can work as a collator operator, a blade balancer, and a bone picker (R. 34-35). The Appeals Council denied review. Plaintiff, after exhausting her administrative remedies, filed this action.

  *B.* *Standard of Review*

  To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

  The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to

perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C. Discussion

1. treating physician

Plaintiff argues the ALJ erred by failing to properly evaluate the opinions of her treating physician, Douglas Pennington, D.O. Generally, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. §§ 404.1527(c)(1-5); 416.927(c)(1-5). [2] A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

---

[2] These sections apply because Plaintiff filed her applications for benefits before March 27, 2017. For claims filed on or after March 27, 2017, the rules in §§ 404.1520c and 416.920c apply. *See* 20 C.F.R. §§ 404.1527, 416.927.

opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). The following factors are relevant in determining the weight to be given to a physician's opinion: 1) the "[l]ength of [any] treatment relationship and the frequency of examination"; 2) the "[n]ature and extent of [any] treatment relationship"; 3) "[s]upportability"; 4) "[c]onsistency" with other medical evidence in the record; and 5) "[s]pecialization." *Id.* The ultimate responsibility for reviewing and assessing Plaintiff's RFC rests with the ALJ. RFC is an assessment based on all relevant medical and other evidence of Plaintiff's ability to work despite his impairments. *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1987)).

On August 24, 2017, Dr. Pennington completed a medical source statement opining that Plaintiff is limited to occasionally lifting up to ten pounds and never lifting more than that; never carrying; sitting for two hours; standing for thirty minutes; walking for fifteen minutes without interruption; sitting for four hours total during an eight-hour workday; standing for one hour total during an eight-hour workday; and walking for one hour total during an eight-hour workday (R. 1026-1027). Dr. Pennington further opined that Plaintiff requires the use of a cane and can only walk without a cane for 30 feet (R. 1027). He opined that Plaintiff is unable to operate foot controls, climb ladders or scaffolds, balance, stoop, kneel, or crouch (R. 1028-1029). He restricted her to no reaching overhead or pushing/pulling; occasionally reaching, handling, and fingering; and frequently feeling (R. 1028). He specified that these limitations began in 2015 (R. 1031). Dr. Pennington completed a mental health evaluation form too. On that form, Dr. Pennington indicated Plaintiff's ability to understand, remember and carry out instructions is impaired. He diagnosed Plaintiff with bipolar disorder and indicated she has had three hospitalizations for homicidal and suicidal ideations (R. 1033).Dr. Pennington indicated Plaintiff has moderate limitations in her ability to interact appropriately with supervisors, co-workers, and the public as

well as respond to changes in a routine work setting (R. 1033). He stated she has a "short temper, angers easily, chronic depression," and indicated she "prefers to be reclusive and lost all but one friend" (R. 1034). Dr. Pennington opined that Plaintiff has had these limitations since 2012 (R. 1034).

In the main, Plaintiff asserts the ALJ erred by failing to offer good cause for rejecting Dr. Pennington's opinions. Specifically, she says the ALJ focused on certain findings from early 2018 and ignored abnormal physical examinations that supported Dr. Pennington's opinions. She also asserts that the ALJ failed to consider that in addition to back pain, she has an array of other physical impairments that support Dr. Pennington's limitations, including surgery in April 2017 to repair a tendon in her right elbow, and surgery in October 2017 for her left Achilles tendon and related post-surgical falls due to instability.

Though Plaintiff complains that the ALJ only referred to dates in 2018 in weighing Dr. Pennington's opinions, review of the twenty-page decision shows the ALJ thoroughly discussed all relevant medical evidence (R. 17-33). The ALJ comprehensively discussed Dr. Pennington's treatment notes as well as the treatment records of other medical providers who cared for Plaintiff during the relevant time frame (R. 22-33). The medical evidence shows Plaintiff received mainly palliative care during the relevant time period. While some of Dr. Pennington's office notes address Plaintiff's back pain, it seems Dr. Pennington referred Plaintiff to an orthopedist for her back-related problems. Dr. Pennington's January 21, 2015 note indicates "seeks pain management" … "ques. on back pain refer" (R. 1024) and his January 26, 2015 office note states "still seeing orthopedic surgeon pain today very minimal still has back pain" (R. 816). Several of Dr. Pennington's office notes from 2017 indicate Plaintiff reported back pain, joint pain or stiffness, though Plaintiff's chief complaints on these dates concerned other problems (R. 1647, 1648, 1654). To that end, Dr. Pennington's records from mid-2015 through mid-2018 reveal visits

6

for routine care such as ear pain and loss of voice (R, 1025, 1010), irritable bowel syndrome complaints (R. 1020, 1010, 988, 985), bronchitis and a rash (R. 1017, 1019), sick with cough and diarrhea (R. 1018), stomach virus (R. 1000), mammogram follow up (R. 990, 1647), sore throat (R. 1649), mole check (R. 1652), and rash and tooth pain (R. 1653). Other of Plaintiff's visits to Dr. Pennington's office during the relevant time frame were for hospital pre-op and follow up appointments (R.1019, 1001, 1650) or related to her high blood pressure/ renal dysfunction (R.1017, 1012, 1007, 1005). And other appointments with Dr. Pennington were related to Plaintiff's anxiety and depression (R.1012, 1005, 1002, 1001, 999, 996, 986, 1647, 1651). Of course, as the Commissioner notes, in the Eleventh Circuit "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision enables the court to conclude the ALJ properly considered the claimant's condition as a whole. *Dyerv. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Plaintiff complains the ALJ overlooked Dr. Pennington's office notes from 2018 that suggest she still had exacerbations of her pain with prolonged sitting, standing, walking, and bending. The parties agree that records from Dr. Pham, Plaintiff's treating physiatrist, show Plaintiff had 4/5 right lower extremity strength, spinal tenderness, and decreased sensation to light tough at L5 and S1. The decision shows the ALJ considered that at times Plaintiff had reduced strength in her right lower extremity (R. 29). The ALJ also discussed her radiological abnormalities (R. 27-28) and nerve conduction study results (R. 28). Importantly, however, even when Plaintiff's strength was reduced and her spine tender with decreased sensation, medical records show her "pain medications [were] controlling the patient's pain well with no noted side effects." The same records (from physiatrist Dr. Pham) often state "patient indicated overall decreased pain, improved functional capacity and improved quality of life" (R. 840, 864, 1264, 1279, 1282, 1285, 1288, 1291, 1294, 1297, 1300, 1303, 1305, 1308, 1311, 1314, 1316, 1319, 1323, 1325, 1327, 1330, 1333,

7

1336, 1342, 1345). Similarly, Dr. Pennington's January 19, 2018 note indicates Plaintiff reported pain exacerbations, and examination revealed decreased range of motion, joint pain, and joint swelling, but the note also indicates normal 5/5 strength of all muscles and lumbosacral spine exam revealed "normal posture and gait" (R. 1660-1661).

Plaintiff also asserts that the ALJ failed to consider that other physical impairments, such as her right elbow tendon repair in April 2017 and her left Achilles tendon repair in October 2017, support Dr. Pennington's limitations. Review of the ALJ's decision shows that the ALJ discussed Plaintiff's right elbow surgery and her left Achilles tendon repair surgery. He noted that records described her as healing well following her elbow surgery with improved range of motion (R. 28). The ALJ discussed that August and September 2017 records reflect that Plaintiff's strength in all areas tested supported the conclusion that her treatment was successful in restoring her functioning (R. 28). After his discussion, the ALJ concluded Plaintiff can perform light work and occasionally use her upper extremities for push/ pull operation of arm and hand controls; cannot reach overhead but can reach in all other directions and finger, feel, and handle on a frequent basis (R. 28). The ALJ specified that Plaintiff's elbow surgery has not resulted in any further limitations (R. 28). Similarly, as to Plaintiff Achilles tendon surgery, the ALJ noted that a March 2018 treatment note following Plaintiff's tendon surgery, shows she recently had her boot on her foot removed and had an antalgic gait. By April 2018 and May 2018 her gait was again described as normal (R. 30). The ALJ opined that the record overall supports the conclusion that the Achilles tendon repair did not result in any limitations that would preclude Plaintiff from standing, walking or moving in a manner consistent with the RFC assessment (R. 30).

In light of all this, I find no error in the ALJ's decision to afford little weight to Dr. Pennington's opinions. Citing to specific examinations by Dr. Pennington, the ALJ explained that he found Dr. Pennington's opinions limiting Plaintiff to sedentary work inconsistent with the

8

objective evidence in the record (R. 31-32). And, the ALJ concluded that Plaintiff's essentially normal examinations and radiological evidence support the conclusion that she can perform a reduced range of light work (R. 32). To the extent that Plaintiff claims the ALJ's explanation for assigning little weight to Dr. Pennington's opinion is inadequate or that the ALJ lacked good cause for rejecting opinions, I do not agree. The ALJ discussed the medical evidence as a whole at length, sufficiently explained his reasons for his residual functional capacity assessment, and buttressed his decision with sufficient detail such that this Court has not needed to speculate about the propriety of the ALJ's decision (R. 21-32). To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239.

   2. *consulting psychologist's opinions*

Plaintiff also contends the ALJ erred in evaluating the opinions of Dr. Lucas, a consultative psychologist. As Plaintiff posits, the opinion of a one-time examining physician is not entitled to the same level of deference as the opinion of a treating physician, however the regulations indicate that the opinion of an examining source is generally entitled to more weight than the opinion of a non-examining source. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(1), 416.927(c)(1). For the reasons set forth below, I find the ALJ's decision supported by substantial evidence.

Dr. Lucas examined Plaintiff on October 23, 2017. Her clinical impression was bipolar disorder with anxious distress with melancholic features with rapid cycling and somatic symptom disorder with predominant pain (R. 1568). Dr. Lucas characterized Plaintiff's insight as limited, her judgment as fair, and her prognosis as guarded (R. 1568). She indicated Plaintiff appears

psychologically competent to manage benefits; maintains relationships with family and two friends; her concentration, persistence and pace were adequate during her interview, but some redirection was needed; and she would likely fail to sustain appropriate relations among co-workers, and supervisors (R. 1568). Dr. Lucas completed a medical source statement, indicating that Plaintiff's ability to understand, remember, and carry out instructions is affected by her impairments. Specifically, she opined that Plaintiff has no limitations in her ability to understand and remember simple instructions or carry out simple instructions; mild limitations in her ability to make judgments on simple work-related decisions; and marked limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex, work-related decisions (R. 1569). She explained, "Claimant is emotionally labile and somewhat hyperverbal. Tasks requiring complexity and concentration would be hampered" (R. 1569). Dr. Lucas also opined that Plaintiff's ability to interact appropriately with supervisors, co-workers and the public, as well as her ability to respond to changes in a routine work setting are affected by her impairments. She opined that Plaintiff is markedly limited in her ability to interact with the public, interact appropriately with supervisor(s), interact appropriately with co-workers, and respond appropriately to usual work situations and changes in a routine work setting (R. 1570). Dr. Lucas explained: "Claimant has verbally attacked others and required restraint to avoid physical altercation;" "Claimant has difficulty sustaining concentration without applied effort. Adaption to change may be difficult;" and "Claimant needed redirection to tasks during the interview" (R. 1570).

Plaintiff asserts the ALJ failed to address all of Dr. Lucas's opinions; I disagree. The form Dr. Lucas completed provided evaluations pertaining to two areas: 1) Plaintiff's ability to understand, remember and carry out instructions; and 2) Plaintiff's ability to interact appropriately with supervisors, co-workers and the public, and respond to changes in a routine work setting.

10

Plaintiff herself admits that the ALJ implicitly accepted Dr. Lucas's finding she has a marked limitation in the first category (R. 22; doc. 13 at p. 20).

Looking at Dr. Lucas's evaluation of the second category (Plaintiff's ability to interact appropriately with supervisors, co-workers and the public, and respond to changes in a routine work setting), I find the ALJ provided ample reasons for disagreeing with Dr. Lucas. Dr. Lucas opined Plaintiff has marked social functioning limitations, and the ALJ adequately discussed his reasons for assigning only little weight. In considering Dr. Lucas's opinions, the ALJ stated her findings of marked social functioning limitations were not consistent with the record. The ALJ indicated that records submitted after Dr. Lucas's review do not document a decline in Plaintiff's functioning. The ALJ also noted that Plaintiff's history of working as a waitress required frequent public contact and the record establishes Plaintiff interacted with her various medical doctors and personnel in the emergency rooms she visited (R. 32).

Plaintiff is correct in noting that Dr. Monis testified she did not have sufficient evidence to evaluate Plaintiff's limitations. But the ALJ did not reject Dr. Lucas's opinions in favor of Dr. Monis's opinions. In his decision, the ALJ referred to Dr. Monis's "characterization of the record" and discussed that the evidence does not demonstrate a decline in Plaintiff's functioning after Dr. Monis testified. Importantly, buttressing his decision, the ALJ discussed Plaintiff's mental health records subsequent to Dr. Monis's October 2017 testimony, noting that in November and December 2017 Plaintiff denied issues with depression and anxiety, and in October 2017 was described as cooperative with appropriate mood and affect (R. 33). Additionally, record evidence from March 2018 shows Plaintiff reported that she was doing much better on Prozac and Wellbutrin and had lost twenty pounds (R. 1652).

In formulating his RFC, the ALJ properly considered all of the medical and opinion evidence. I find that substantial evidence supports his decision to assign little weight to Dr. Lucas's

opinions and that he provided ample evidence for this Court's review. Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c). As already discussed, this Court may not re-weigh the evidence and reach its own conclusions about a claimant's RFC. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). Thus, even if substantial evidence supported a more restrictive RFC, this Court must affirm if the ALJ's decision is supported by substantial evidence. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

Lastly, buried within her argument about the weight assigned to Dr. Lucas's opinions, Plaintiff asserts the ALJ failed to consider her testimony that she was unable to afford ongoing mental health treatment. In his decision the ALJ noted Plaintiff's conservative mental health treatment consisting mainly of medication provided by her primary care physician supports a conclusion that her condition does not preclude wok in accordance with the RFC (R. 31). While he did not discuss Plaintiff's ability to afford treatment, I find any error in this regard harmless as the ALJ did not significantly rely on a lack of treatment in his disability decision. Rather, in his evaluation, the ALJ acknowledged Plaintiff's Baker Act episodes, and her more recent effective conservative mental health treatment (R. 27, 31). He properly supported his opinion that the record as a whole reflected that Plaintiff is capable of performing jobs consistent with his RFC. *See contra Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015) (remand appropriate where ALJ "primarily if not exclusively" relied on failure to seek treatment yet did not "scrupulously" probe whether there was good cause).

*D. Conclusion*

For the reasons stated above, it is ORDERED:

(1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on March 18, 2020.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE